**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN DEVORE,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| v. | : | |
| | : | |
| **CHENEY UNIVERSITY of** | : | |
| **PENNSYLVANIA, *et al.*,** | : | |
| Defendants. | : | **No. 11-274** |

**M E M O R A N D U M**

PRATTER, J.                                               JANUARY 3, 2012

In this employment discrimination case brought by John DeVore, a former employee of

both Cheyney University and Colwyn Borough, Mr. DeVore charges his former employers and

several of their employees with discriminating against him because of his race, First Amendment

activities, political affiliation, gender, and age, in violation of Title VII, the PHRA, and the First

and Fourteenth Amendments.   Defendants have filed seven motions to dismiss Mr. DeVore's

First Amended Complaint.[1]  The Court heard oral argument on the motions on October 27, 2011,

and the matter is now ripe for decision.

**I.      Factual and Procedural History**

Because none of the Cheyney Defendants have filed a motion to dismiss, the Court only

briefly sets forth the allegations against Cheyney University, Thomas Flagg, and Lawrence

Richards, and instead focuses on the events relating to Mr. DeVore's employment by Colwyn

Borough, accepting as true, for the purposes of this opinion, the factual allegations in Mr.

---

[1]      The motions were filed by Colwyn Borough and by Colwyn employees Wendell
Reed (misspelled "Windell Reed" in the caption), Daniel Rutland, Tonette Pray (misspelled
"Toonett Pray" in the caption), Bryan Hills, James Hazelton, Steve Sibbett, and John Fitzgerald.

DeVore's First Amended Complaint.

As background, some years ago, Mr. DeVore was a Philadelphia police officer who successfully sued the City of Philadelphia for retaliating against him for exercising his First Amendment rights.  He generally alleges that each of the Defendants in this case knew of his civil rights lawsuits and his "prior and current opposition to racism and reporting illegal conduct about police."  First Amended Complaint ("FAC") ¶ 12.

Mr. DeVore was hired by Cheyney University in August of 2006 as a law enforcement officer.  While employed there, he "opposed racism in the employment that included all or some of the hiring, disciplining, and scheduling process . . . [and] used the process of Cheyney University . . . to oppose such."  FAC ¶ 14.  Because of this opposition and because Defendants knew of his history of pursuing violations of his civil rights in court, the Defendants discriminated and retaliated against him, creating a "hostile work environment."  This harassment extended to the Cheyney Defendants and the Colwyn Defendants somehow using Defendant Richards's "girlfriend," the former mayor of Darby Borough, to spread rumors to the Mayor of Colwyn Borough.  Eventually, in October 2008, Mr. DeVore filed an EEOC complaint, which was dual-filed with the PHRC, alleging employment discrimination because of "race, color, sex, age and retaliation."  FAC ¶ 35.

On June 11, 2009, Mr. DeVore sought and gained supplemental employment with Colwyn Borough and was slated to work the midnight shift.  Then, a month later, Cheyney changed Mr. DeVore's shift so that he could not work at both places at the same time.  Because of the hostile work environment and shift change, Mr. DeVore alleges that he was constructively discharged and resigned from Cheyney in August 2009.  He later tried to rescind his resignation

but was not allowed to do so, even though similarly situated female employees and an employee

who had not made EEOC complaints were allowed to resume duties after either resigning or

being terminated.

In July 2009, Defendants Bryan Hills and James Hazelton, white male police officers

employed by Colwyn Borough, each met with Mr. DeVore separately to tell him "he [was]

making a poor choice to seek employment with Colwyn Borough, and that he[ Plaintiff DeVore]

[sic] did not have a future with Colwyn Borough in its Police Department." FAC ¶ 42.  Then,

Mr. DeVore alleges, Defendants Richards (who worked at Cheyney, not for the Borough),

Fitzgerald, Hazelton, Sibbett, Robinson,[2] Rutland, Hills, and Gallahan[3] entered into an agreement

to keep Mr. DeVore from maintaining his employment at Colwyn.  Specifically, Mr. DeVore

alleges that Paula Brown[4] told Colwyn Mayor John Fitzgerald about Mr. DeVore's retaliation

charge against Cheyney and about his attempts to help others bring anti-discrimination charges

against Cheyney.  She allegedly also told him that Mr. DeVore was arrested in Philadelphia and

fired by the Philadelphia Police Department for stealing evidence, knowing that this was untrue.

Mayor Fitzgerald then passed this information on to Bryan Hills.  Mr. DeVore does *not* allege

that Defendants Bryan Hills and John Fitzgerald knew that the statements about Mr. DeVore's

issues with the Philadelphia police were untrue.

---

[2]        Defendant Franko Robinson has been voluntarily dismissed from the suit.

[3]        I.e., all individual defendants except for Wendell Reed, Tonette Pray, and Thomas
Flagg.  At oral argument on the motions to dismiss, Mr. DeVore's counsel voluntarily dismissed
the case as to Mr. Gallahan, as noted in the Order accompanying this opinion.

[4]        Presumably, Ms. Brown is Defendant Richards's girlfriend.  This is not crystal
clear from the First Amended Complaint, but is mentioned in various motion opposition papers.
Ms. Brown is not a defendant.

3

Mr. DeVore also alleges that John Gallahan knowingly lied to Defendants John Fitzgerald and James Hazelton by telling them that Mr. DeVore had an arrest record and was not qualified to be recertified as a law enforcement officer.  Again, Mr. DeVore does *not* allege that Defendants John Fitzgerald and James Hazelton knew that this information was false.

Mr. DeVore alleges that the "conspiracy" he has described prevented him from being timely sworn in as Colwyn police officer.  Defendant Fitzgerald, in furtherance of the conspiracy, refused to swear him in when he was originally scheduled to be sworn in.  Mayor Fitzgerald "and others of the agreement" prevented Mr. DeVore's "MPO certification" from being issued and provided to Colwyn Borough council, which prevented Mr. DeVore "from being paid as a police officer but not to be a police officer."  FAC ¶ 43(e).  In November 2010, he was finally sent to municipal police officer education and training for recertification, but even after receiving his certificate, Mayor Fitzgerald refused to provide a copy to the Borough Council.  Mr. DeVore seems to allege that Caucasian officers, such as Defendants Hills, Hazelton, and Sibbett, were not treated similarly; however, his comment about the treatment of white officers just trails off without conclusion, and he makes no allegation that they were situated similarly to him.  *See* FAC ¶ 44(c).

Mr. DeVore also claims that Defendants Steve Sibbett, Franko Robinson, and James Hazelton conspired to interfere with his swearing in on November 12, 2010 by calling to find out from which direction he would be driving and what time he planned to arrive for his swearing in, and then giving him a bogus traffic citation on his way there.  Defendant Robinson allegedly called him, and Defendant Sibbett is identified as actually making the stop after receiving a text from Defendant Robinson.  Hazelton also allegedly received a text about the stop from some

4

unidentified person and stepped outside Borough Hall to yell to Sibbett not to give DeVore "any police courtesy."  FAC ¶ 43d(2).[5]

Mr. DeVore alleges that in July 2010 he and two other unnamed African-American officers were singled out and not placed on the Colwyn work schedule.[6]  He claims that no Caucasian officers were denied placement on the work schedule.  The two other officers filed PHRA charges and were eventually placed back on the schedule, while Mr. DeVore was not.  He claims that Colwyn Borough Mayors Fitzgerald and Rutland[7] and Council President Tonette Pray continued to exclude him from the schedule.

In December 2010, Mr. DeVore was assigned to "training" but not placed on the official police schedule, "intended so that the other officers and the Mayor would not be aware when Plaintiff was working."  FAC ¶ 44(d).  Later that month, on December 29, 2010, Lt. Reed asked Mr. DeVore about his political affiliations and the status of his EEOC complaint.  Council President Tonette Pray, an African-American woman, also asked him about his political affiliations, and responded to his answer by saying, "Guess you're going to climb in bed with

---

[5]     The First Amended Complaint contains two paragraphs numbered 43d.  To distinguish them, the Court will refer to the first as 43d(1) and the second as 43d(2).

[6]     He later alleges in a paragraph discussing events in December 2010 that Defendant Reed was in charge of making the police schedule, although the First Amended Complaint does not clearly state whether Lt. Reed was merely the person who physically drew up the schedule or was the actual decision maker with regard to scheduling, nor does it make clear whether Lt. Reed was the person in charge of making the police schedule for the entire time period encompassed by the First Amended Complaint.  Under 53 P.S. § 46121, the authority to determine the schedule of borough police officers lies with the borough mayor.

[7]     It seems as though John Fitzgerald preceded Daniel Rutland as mayor of Colwyn Borough, but the First Amended Complaint does not make clear when one mayor's term ended and the other's began, especially because the allegations suggest some overlap.

those 'cracker' [sic] and other house niggas?"  FAC ¶ 44(e).

A few weeks later, on January 14, 2011, Mr. DeVore was placed on midnight shift alone, requiring him to work without backup despite still being in training.  The next day, Lt. Reed and an unnamed Philadelphia police sergeant went to Mr. DeVore's house and terminated him without warning and without prior discipline.  Lt. Reed said that Mr. DeVore was late for his shift on January 1, 2011 and did not show up or call in for his shift on January 5, 2011.  Mr. DeVore noted in his First Amended Complaint that he was always verbally told when to come in for training, rather than his name being put on the schedule, but he does not deny that he missed a shift and was late for another shift, nor does he allege that he was not accurately told when to report for duty.

Mr. DeVore claims that he was discharged by Defendant Mayor Daniel Rutland, who had commented on his prior civil rights suits, and that Mayor Rutland discharged him because of those suits and/or because of his political affiliation.  He also alleges that Mayor Rutland scheduled or approved of the schedule when Mr. DeVore was forced to work alone for the same reasons.[8]  Mr. DeVore claims that Colwyn Borough Council President Tonette Pray voted to affirm his dismissal because of his political affiliation and that she said that he "would side with republicans in proximity to the decision support Rutland's discharge of DeVore [sic]."  FAC ¶ 45.

Mr. DeVore alleges that he has exhausted all administrative remedies by dual-filing charges with the EEOC and the PHRC and incorporates by reference EEOC right-to-sue letters

---

[8]      This allegation is particularly confusing, especially given that one of Mr. DeVore's chief complaints is that he was *not* put on the schedule.

attached to his original complaint.  However, those right to sue letters are dated October 22, 2010, a point of some contention with the Colwyn Defendants, the offending actions of whom largely occurred after that date according to the First Amended Complaint.[9]

On January 18, 2011, Mr. DeVore filed a Complaint alleging several causes of action against a host of defendants.  In late February, 2011, Colwyn Borough filed a motion to dismiss that Complaint.  Rather than responding directly to that motion, Mr. DeVore opted to file a First Amended Complaint on March 7, 2011.[10]

The first count of Mr. DeVore's First Amended Complaint is titled "Title VII Race Discrimination and Retaliation."  He claims that in addition to being an African American man, he has spoken out against racism and other types of employment discrimination and criminal behavior in the workplace.  He claims that he was subject to different treatment because of his race, sex, petition clause and free speech activities by Cheyney University, and because of his

---

[9]     A number of events are alleged to have occurred in November 2010.  That date may be a typographical error, as the EEOC charge attached to Daniel Rutland's response to Mr. DeVore's opposition to Mr. Rutland's motion to dismiss discusses some of the same events as occurring in November 2009, and the EEOC charge in which those allegations appear is dated December 9, 2009.  Because the EEOC charge is outside the First Amended Complaint, however, the Court will not consider it for the purposes of this decision, except insofar as it supports the conclusion that Mr. DeVore should be granted leave to amend.

[10]     One of Mr. DeVore's arguments in opposition to Colwyn Borough's motion to dismiss the First Amended Complaint is that Colwyn is foreclosed from including in its motion any arguments which it could have raised as to the original complaint but did not.  Because Colwyn's motion to dismiss the original complaint was not actually decided on its merits, but rather was denied as moot upon the filing of the First Amended Complaint, Mr. DeVore's concern that Colwyn is unfairly receiving another bite of the apple is baseless.  *See, e.g., Knight v. ChoicePoint, Inc.*, Civil Action No. 08-4676-NLH-kmw, 2010 WL 2667410, at *2 (D.N.J. June 28, 2010).

political affiliation[11] by Colwyn Borough and the Borough Defendants.  However, he goes on to allege racial discrimination against Colwyn and the Borough Defendants as well, and to generally allege that all Defendants treated him unfairly because of his race, political affiliation, sex, age, and "activities protected by law."  FAC ¶ 51.

In Count II of his current complaint, Mr. DeVore brings a 42 U.S.C. § 1983 claim against Defendants Lawrence Richards, Bryan Hills, John Fitzgerald, James Hazelton, Steve Sibbett, Franko Robinson, Daniel Rutland, and Tonette Pray.[12]  He claims that the named defendants violated his civil rights because he engaged in First Amendment activities, such as filing a discrimination charge, successfully suing the City of Philadelphia and others, and speaking out against employment discrimination.  He specifically alleges that the Defendants named in this count, because of his race, First Amendment activities, or political affiliation, changed his work shifts, failed to pay him what he was due, denied and delayed his MPO recertification, delayed his swearing in, issued a false traffic citation, delayed the criminal process of the citation and thereby denied him prompt access to the courts, knowingly lied about his past employment and arrest record, terminated him, and/or constructively discharged him and refused to let him rescind his resignation.  He also alleges that these Defendants acted maliciously, with "hatred for his race and protected activities," and with deliberate indifference or reckless disregard for his rights. FAC ¶ 62.  As to Defendant Rutland, Mr. DeVore alleges that Mayor Rutland terminated him

---

[11]     Although political affiliation discrimination may give rise to a First Amendment claim for government employees like Mr. DeVore, it is not a proper basis of a Title VII claim. *See* 42 U.S.C. § 2000e-2(a) (prohibiting discrimination based on race, color, religion, sex, and national origin).  Thus, to the extent Mr. DeVore attempts to allege a Title VII claim based on political affiliation discrimination, that claim must be dismissed.

[12]     Absent from this list are Individual Defendants Reed, Flagg, and Gallahan.

"without prior notice and hearing, or pre-termination notice and opportunity to present a response to the termination."  FAC ¶ 63.

In Count III, Mr. DeVore alleges that Defendants John Fitzgerald, James Hazelton, Steve Sibbett, Franko Robinson, and Daniel Rutland denied his due process and equal protection rights. Specifically, he claims that Fitzgerald, Hazelton, Sibbett, and Robinson delayed sending his traffic citation to the court, which then delayed a hearing and resulted in preventing Mr. DeVore's witnesses from "having fresh memories of the event in their mind to aid in the defense of the stop sign citation."  FAC ¶ 66.  He also claims that Defendant Sibbett refused to give him cell phone numbers and provider names so that Mr. DeVore could obtain evidence.  He alleges that Defendant Fitzgerald refused to swear Mr. DeVore in and suspended him without pay, a pre-suspension hearing, notice, or due process of law–all because of Mr. DeVore's race.  Finally, he alleges that Defendant Rutland terminated him without a hearing or an opportunity to discuss the termination after he had passed a six-month probationary period.

In Count IV, Mr. DeVore asserts a *Monell* claim against Cheyney and Colwyn, alleging that they have a policy or practice of discrimination, and do not train against, retaliation and race, sex, age, and political affiliation discrimination, as well as a policy or practice to condone due process and equal protection violations.  He claims that Colwyn Borough knew from a 2008 or 2009 charge by an African-American police officer that its policy or practice of discrimination would repeat itself and did nothing to correct it.

In Count V, Mr. DeVore alleges discrimination and retaliation in violation of the PHRA. In addition to employers Cheyney University and Colwyn Borough, he specifically names Lawrence Richards, Mayors Fitzgerald and Rutland, Council President Pray, Police Chief Bryan

Hills, Sgt. James Hazelton, and John Gallahan as supervisors who aided and abetted such violations. He claims that all of these named defendants, plus Defendant Franko Robinson denied him equal employment opportunities due to his race, sex, age, and protected activities.

For all of these violations, Mr. DeVore seeks back pay, front pay, an order reinstating him as sergeant at Cheyney and police officer at Colwyn, compensatory damages, and attorneys' fees. His prayer for relief does not list punitive damages, but he does state in paragraph 2 of his First Amended Complaint that he seeks punitive damages against the individual defendants.[13]

Mr. DeVore filed his original complaint on January 18, 2011, just a few days after he was terminated by Colwyn Borough. After Colwyn Borough filed a motion to dismiss, he filed his First Amended Complaint on March 7, 2011. Thereafter, the Colwyn Defendants filed seven motions to dismiss.

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (alteration in original) (quoting *Conley*, 355 U.S. at 47), the plaintiff

---

[13]   Many of the individual Defendants briefly argue, without any citations to legal authority, that Mr. DeVore has not alleged a factual predicate sufficient to support punitive damages. To the extent that he has failed to state a claim against those Defendants, the Court agrees. To the extent that he has stated claims against the Defendants, however, the Court will not rule on the issue of punitive damages at this early stage of the case, particularly without a more substantive legal argument to support such a dismissal.

must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *see also Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1323 (2011). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation omitted). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must only consider those facts alleged in the complaint and accept all of those allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Concomitantly, the Court must also accept as true all reasonable inferences that

11

may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party.  *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).  Nonetheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citing *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d. 902, 906 (3d Cir. 1997).

## III.   DISCUSSION

### A.   Misjoinder

Most of the moving Defendants take issue with the fact that Mr. DeVore has combined both the Cheyney University defendants and the Colwyn Borough Defendants into a discordant melange, citing Federal Rule of Civil Procedure 20 and asserting that the two sets of Defendants do not share transactions or occurrences or common questions of law or fact, making such joinder improper.  This argument is not a ground for dismissal, but could be a ground for severing the case.  *See* Fed. R. Civ. P. 21.  Defendants cite no case law in support of their misjoinder argument.

Mr. DeVore argues that the claims arise from the same series of transactions or occurrences because Defendant Lawrence Richards changed Mr. DeVore's schedule at Cheyney after learning that he had gained employment at Colwyn Borough and because Mr. Richards directed his girlfriend, Paula Brown, to spread rumors to Defendant Fitzgerald, who consequently interfered with Mr. DeVore's scheduling and recertification.  The Court notes that the First Amended Complaint does not explicitly state that Defendant Richards directed his "girlfriend" to

do anything, although this is loosely implied by the allegation that Richards was part of the conspiracy to interfere with Mr. DeVore's employment at Colwyn Borough.

Even keeping in mind the admonition that Rule 20 is to be construed broadly, the link between the two sets of Defendants certainly is tenuous, but there still is at least a weak link–Lawrence Richards is alleged to be jointly responsible both for the conduct at Cheyney University and for the conduct at Colwyn Borough.  This is not to say that the parties will be forever foreclosed from seeking to sever the cases; however, at this very early stage, the Court cannot conclude that the defendants have been misjoined.  Thus, for now, the matter may proceed as a single case, without prejudice to a later request for severance should discovery not support the facts alleged that currently link the claims.

### B.    Motions to Dismiss Filed by Wendell Reed and Bryan Hills

Before addressing the more substantively complicated motions, the Court turns first to Defendant Wendell Reed's Motion to Dismiss.

Defendant Reed is not named in a single count of the First Amended Complaint, nor is he listed as one of the parties to the alleged "agreement" to frustrate Mr. DeVore's employment opportunities at Colwyn Borough.  While Mr. DeVore tried valiantly in his opposition to the Reed motion and at oral argument to tie Lt. Reed to actionable conduct alleged in the First Amended Complaint, many of the facts he raises in argument do not appear in the First Amended Complaint.  Moreover, the simple fact remains that by not mentioning Lt. Reed in any of the counts of the First Amended Complaint, Mr. DeVore has failed to meet his Rule 8 obligations to provide Lt. Reed with notice of the claims he is asserting against him.  The Court will grant Lt. Reed's motion to dismiss in its entirety, but will allow Mr. DeVore an opportunity to seek leave

13

to amend his complaint if he believes he can do so in good faith.

Although Chief Bryan Hills is named specifically in a few counts of the First Amended

Complaint (Counts II and V), the facts alleged against him are decidedly sparse.  There are no

allegations about any specific actions he supposedly took, and although he is listed in Count V as

a supervisor, there are no allegations that he knew of and/or acquiesced in the specific offending

conduct of any of the other Defendants.  Therefore, the claims against Defendant Bryan Hills will

also be dismissed without prejudice, subject to the same opportunity to Mr. DeVore to try to

correct his deficiency.

### C.    The "Agreement"

Another matter that concerns several of the Counts and Defendants is the alleged

"agreement" to "bar DeVore from maintaining the Colwyn employment."  FAC ¶ 43.  Although

Mr. DeVore does not include a conspiracy count in his First Amended Complaint, he seems to

suggest in some of his efforts to oppose the motions to dismiss that he *is* alleging such a claim,

and at the very least he attempts to use this "agreement" to connect various Defendants to actions

taken by other Defendants.

In order to plead a conspiracy, a plaintiff must allege "some factual basis to support the

existence of the elements of a conspiracy: agreement and concerted action."  *Capogrosso v.*

*Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) (internal quotation omitted).  Beyond

stating that an agreement existed, Mr. DeVore alleges no facts in support of such an agreement.

He does not allege that various members of the "agreement" knew about the actions of other

members.  To the extent that Mr. DeVore attempts to either assert a conspiracy claim or to link

the conduct of the alleged conspirators to each other by way of the allegation of a conspiracy, his

14

claims must fail for lack of sufficient allegations in support of this linchpin "agreement" and for lack of an explicit conspiracy claim in the counts listed in the First Amended Complaint.

**D.     42 U.S.C. § 1983**

Mr. DeVore raises three claims under 42 U.S.C. § 1983: a First Amendment claim (Count II), a Fourteenth Amendment claim (Count III),[14] and a *Monell* claim (Count IV).  Because there is substantial overlap between the actions that Mr. DeVore claims violated his First and Fourteenth Amendment rights, these two claims will be analyzed together, followed by a discussion of the *Monell* claim.

*1.     First Amendment – Legal Framework and Threshold Issues*

Under the First Amendment, public employees are entitled to protection from adverse employment decisions made on the basis of the employee's political affiliation or because of protected petitioning activity and/or speech on matters of public concern.  *See Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2493, 2500-01 (2011); *Goodman v. Pa. Turnpike Com'n*, 293 F.3d 655, 663 (3d Cir. 2002).  In order to state a claim for First Amendment retaliation, a plaintiff must plead "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."  *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

In his First Amended Complaint, Mr. DeVore claims that various Colwyn employees,

---

[14]     The Court notes that Mr. DeVore's counsel clarified at oral argument and in his oppositions to Defendants' motions that he is not seeking to sue the individual Defendants in their official capacities in Counts II and III.  Thus, the Court will not address the Defendants' arguments relating to this issue.

including Bryan Hills, John Fitzgerald, James Hazelton, Steve Sibbett, Daniel Rutland, and

Tonette Pray retaliated against him for his prior First Amendment activities, including filing

charges of discrimination against various employers and aiding others in filing such charges, as

well as for his political affiliation.[15]  After this suit was initiated and after many of the

Defendants' motions to dismiss were filed, the Supreme Court decided the *Guarnieri* case, cited

above, overturning the Third Circuit's holding that the First Amendment protects public

employees from retaliation based on any petitioning activity and, instead, now requiring that such

petitioning activity relate to a matter of public concern.  *See Guarnieri*, 131 S. Ct. at 2500-01.

Counsel for several Defendants briefly raised the issue of *Guarnieri* at oral argument as a

reason Mr. DeVore's claim should fail.  Mr. DeVore's counsel responded that because he alleged

that the retaliatory acts stemmed from Mr. DeVore's suit against the City of Philadelphia, in

which Mr. DeVore claimed that he had been punished for reporting another officer's misconduct,

the "public concern" test was met in this case.[16]  While discovery may show that one of Mr.

DeVore's more personal charges of discrimination actually motivated some or all of the

Defendants' behavior (or that the Defendants acted for reasons completely unrelated to any prior

petitioning activity or Mr. DeVore's political affiliation), at this stage of the litigation, Mr.

---

[15]     For reasons that are not apparent, he also mentions race-based discrimination in
his First Amendment count; however, racial discrimination is not actionable under the First
Amendment.  Thus, to the extent that Mr. DeVore's First Amendment claim is based on racial
discrimination, it must be dismissed.

[16]     Although the substance of Mr. DeVore's prior suit is not clearly articulated in the
First Amended Complaint, the factual statements about the case made by Mr. DeVore's counsel
are consistent with the facts reflected in judicial opinions regarding that case, of which the Court
will take judicial notice.  *See, e.g., DeVore v. City of Philadelphia*, No. Civ. A. 04-3030, 2005
WL 2178909, at *1 (E.D. Pa. Sept. 7, 2005).

DeVore has alleged enough to satisfy prong one of his First Amendment claim, which still leaves open for discussion the other two prongs.

2.     *Fourteenth Amendment – Legal Framework*

Mr. DeVore claims that the Defendants violated his substantive due process, procedural due process, and equal protection rights. To state a claim for violation of procedural due process rights, plaintiffs must allege that "(1) [they were] deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [them] did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).

Some deprivations are not permitted even if proper procedures are employed. "While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution." *Regents of the Univ. of Michigan v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring). Thus, to state a substantive due process claim, the deprivation must be of a fundamental right, and the government conduct at issue must be "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *See Kaucher v. County of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

In order to state an equal protection claim in the public employment context, plaintiffs must allege that they are members of a protected class and that they received different treatment than that received by other similarly-situated individuals. *See Oliveira v. Twp. of Irvington*, 41 F. Appx. 555, 559 (3d Cir. 2002) (citing *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir.

1992)).

### 3. *Delay in swearing in and MPOETC certification*

Under both Counts II and III, Mr. DeVore claims that the individual Defendants violated his First and Fourteenth Amendment rights by delaying his swearing in and MPOETC certification either to retaliate against him because of his past First Amendment activities or because of his race. The only Defendant who is specifically identified as engaging in this behavior is Mayor John Fitzgerald.[17] However, the First Amended Complaint states that Mayor Fitzgerald was told by two individuals that Mr. DeVore had an arrest record that prevented him from being sworn in or certified to be a police officer, and although the First Amended Complaint specifically alleges that the two individuals who gave Defendant Fitzgerald this information knew it to be false, there is no allegation that Mayor Fitzgerald himself knew or should have known it to be false.[18] Thus, Mr. DeVore has failed to plead that Mayor Fitzgerald delayed either his swearing in or his certification for actionable reasons, and in fact has pleaded the opposite.[19]

---

[17] Mr. DeVore tries to cast a wider net by asserting that "others of the agreement" also contributed to these delays, but such a broad, non-specific statement fails to meet the notice requirements of Rule 8, especially where, as here, his attempt at alleging an "agreement" falls so short of the mark.

[18] For the same reason, to the extent that Mr. DeVore charges the Defendants listed in Count II of "disclosing knowing false employment and arrest information and information expunged by the courts of the Commonwealth of Pennsylvania," that claim must fail as to the Colwyn Defendants, as the only people who are alleged to have spread false information knowing the information to be false are Paula Brown and John Gallahan. Ms. Brown has never been a defendant in this case, and Mr. DeVore has voluntarily withdrawn his claims against Mr. Gallahan.

[19] Mr. DeVore also adds in Count III that Mayor Fitzgerald suspended Mr. DeVore without pay and did not provide him due process of law. However, there are absolutely no other

4.      *Issuance of false traffic citation*

One of the alleged wrongful acts that Mr. DeVore raises in Count II, his First Amendment

claim, is that he was issued a false traffic citation.[20]   Mr. DeVore claims that former Defendant

Franko Robinson called Mr. DeVore on November 12, 2010 to find out what route he would be

taking to attend his swearing in at Colwyn Borough Hall.   Then various unspecified "Colwyn

Defendants" texted each other the route information, and Defendant Steve Sibbett stopped Mr.

DeVore at a corner outside Colwyn Borough Hall, falsely claiming that Mr. DeVore had failed to

stop for a stop sign.   As Officer Sibbett conducted the stop, Sgt. James Hazelton received a text

from some unidentified source telling him about the stop.   Sgt. Hazelton then went outside

Borough Hall and told Officer Sibbett "not to give DeVore any police courtesy and to issue the

citation."   FAC ¶ 43d(2).   Mr. DeVore alleges that the bogus traffic stop was carried out to delay

his swearing in, either because of his prior First Amendment activities or because of racial

animosity.   He neglects to plead that the stop actually did further delay his swearing in.

Because Defendant Franko Robinson was voluntarily dismissed from the case, the only

---

allegations in the First Amended Complaint relating to this alleged suspension.  If this allegation
is somehow connected to the failure to swear him in, then it must fail for the same reasons
discussed above.  If it is a separate allegation, then Mr. DeVore has failed to plead facts sufficient
to put Mayor Fitzgerald on notice of his claim against him.
      Mr. DeVore also claims that Mayor Fitzgerald kept Mr. DeVore off the work
schedule because of his race.  Although he does allege that no white officers were kept off the
schedule, he does not allege that those officers were similarly situated to him, so this equal
protection claim must fail.  *See Sunrise Development v. Lower Makefield Township*, No. 2:05-
CV-02724, 2006 WL 626806, at *7 (E.D. Pa. Jan. 23, 2006) (dismissing equal protection claim
when plaintiffs did not identify any similarly situated individuals in their complaint, noting that
"this Court cannot assume that plaintiffs can prove facts that they have not alleged"); *Weber v.
Potter*, 338 F. Supp. 2d 600, 607 (E.D. Pa. 2004).

[20]      This issue is not raised in Count III of Mr. DeVore's First Amended Complaint.

two Defendants specifically named in connection with the traffic stop incident are Steve Sibbett

and James Hazelton.  James Hazelton, however, is only alleged to have been alerted by someone

of the traffic stop and to have told Defendant Sibbett not to give Mr. DeVore police courtesy.  It

is not alleged that Sgt. Hazelton saw the actual stop take place or that he knew that Mr. DeVore

was innocent of any traffic violation.  Thus, absent any allegations that Sgt. Hazelton knew that

the stop was unlawful when he made his statement to Defendant Sibbett and/or that he had the

authority to, and did, command Defendant Sibbett to issue a false citation (as opposed to making

a stray comment regarding a traffic stop), Sgt. Hazelton cannot be held liable for the traffic

citation.  *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586

(3d Cir. 2004) (noting that a supervisor is only liable for the civil rights violation of his

subordinates if he "participated in violating the plaintiff's rights, directed others to violate them,

or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.")

As to Officer Sibbett, although he is alleged to have intentionally stopped Mr. DeVore

and issued a traffic citation without cause, there are no specific allegations that he acted with

unlawful intent to support a First Amendment retaliation claim.  Aside from general conclusory

allegations, there are no facts alleged that would support that Officer Sibbett was motivated by

Mr. DeVore's First Amendment activities.  Thus, this claim will also be dismissed against

Defendant Steve Sibbett.  Once again, if Mr. DeVore determines he has reason to do so, he may

seek leave to amend this claim as to either or both of these Defendants.

     5.    *Delay of criminal process*

In both Counts II and III, Mr. DeVore complains that various Defendants somehow

delayed sending the bogus traffic citation to the court, which delayed scheduling a hearing and

resulted in Mr. DeVore's witnesses not having "fresh" memories.  In Count III, Mr. DeVore

further alleges that Defendant Sibbett would not provide Mr. DeVore with cell phone numbers

and provider names in connection with that matter.  Defendants contend that Mr. DeVore has not

alleged enough facts to connect to the delay most, if not all, of the individual Defendants alleged

to have participated in the event; that Mr. DeVore has not sufficiently alleged that he was

actually prejudiced by any delay; and that Mr. DeVore has not sufficiently alleged that Officer

Sibbett had any duty to turn over the information Mr. DeVore claims he withheld.

The Defendants are correct that Mr. DeVore has not included in his First Amended

Complaint any facts regarding the outcome of his traffic court hearing.  Thus, it is not clear

whether he was actually prejudiced by any delay or failure to provide information.  To bring a

claim of denial of the right to access the courts, a plaintiff must show that the defendants' actions

caused the "'loss or inadequate settlement of a meritorious case, . . . the loss of an opportunity to

sue, . . . or the loss of an opportunity to seek some particular order of relief.'"  *See Gibson v.*

*Supt. N.J. Dept. of Law*, 411 F.3d 427, 441 (3d Cir. 2005) (quoting *Christopher v. Harbury*, 536

U.S. 403, 414 (2002)).  Mr. DeVore has not pleaded that he lost his case or otherwise lost an

opportunity to raise any right to relief because of the Defendants' alleged actions.  Thus, to the

extent Mr. DeVore attempts to base Count II or III on the delayed traffic court hearing and/or any

other alleged attempts to interfere with his right to access, those Counts will be dismissed.[21]

---

[21]     Although Mr. DeVore can seek leave to amend on this issue, the Court cautions
Mr. DeVore that he appears to be caught between a rock and a hard place.  If he was not
convicted of any traffic violation, then Mr. DeVore will be hard pressed to plead that he was
actually prejudiced by the Defendants' conduct.  However, if he was, indeed, convicted of a
traffic court violation and that violation was not subsequently overturned, this portion of his
claim may very well be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  *See, e.g., Gilles v.*
*Davis*, 427 F.3d 197, 209-10 (3d Cir. 2005); *Koger v. Florida*, 130 Fed. Appx. 327, 332-33 (11th

6.    *Termination*

At this stage of the case, Mr. DeVore's First Amendment retaliation claim against Council President Tonette Pray will not be dismissed.[22]  Mr. DeVore has alleged that both Mayor Rutland and Council President Pray terminated him for either his prior First Amendment activities or his political affiliation.  He specifically pleads that each of them commented on one of those issues prior to dismissing him.  Both Defendants argue that they did not have the capacity to fire Mr. DeVore–Mayor Rutland because the power to fire a police officer legally lies with the Borough Council and Council President Pray because her vote was only one of the votes cast by the Council in favor of affirming Mr. DeVore's termination.

Mayor Rutland's argument provides sound legal authority as to why he cannot be liable under § 1983 for Mr. DeVore's termination–under 53 P.S. § 46121, the authority to terminate a police officer lies with Borough Council, not a mayor.  Without additional facts regarding the Borough Council vote, however, it is impossible at this time to know whether Ms. Pray's vote caused Mr. DeVore's termination.  Because the Court must construe the facts in the light most favorable to Mr. DeVore, the First Amendment retaliation claim against Ms. Pray will stand for now.

Mr. DeVore's due process claim relating to his termination only names Mayor Rutland.  Because he has not alleged any facts demonstrating that Mayor Rutland–as opposed to the

---

Cir. 2005).

[22]     The Court notes that although counsel for Mr. DeVore was under the impression that he had filed a response to Ms. Pray's Motion to Dismiss, no such response can be found on the docket for this litigation.  However, as Mr. DeVore has filed oppositions to each of the other motions, which present similar arguments, and maintained at oral argument that he did, in fact, oppose Ms. Pray's motion, the Court will not consider the Pray motion uncontested.

Borough Council–had a duty or the authority to provide the process to which he claims to be

entitled and because the Pennsylvania statute granting only the Borough Council the authority to

terminate a police officer suggests that the authority and duty to provide due process would lie

with the Council, this portion of Count III must fail.  The Court will allow Mr. DeVore to try to

amend this count, but points out that to the extent that Mr. DeVore attempts to state a substantive

due process claim relating to his termination or any other conditions of his employment, the

claim must fail because "public employment is not a fundamental right entitled to substantive

due process protection."  *See Hill*, 455 F.3d at 235 n. 12.[23]

> 7.    Monell *claim*

Under *Monell*, "[a] municipality cannot be held liable solely because it employs a

tortfeasor."  *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Rather, plaintiffs

must allege that the constitutional injury was the result of a policy or custom of the municipality.

*Id.*  As a threshold matter, however, plaintiffs must first plead that they suffered a constitutional

injury before the Court need even look at whether he has pled facts sufficient to support that the

constitutional injury was the result of an unlawful policy or custom of the municipality.

---

[23]     The Court also notes that Mr. DeVore's First Amended Complaint is far from clear on the issue of whether he even had a property interest in his employment that would entitle him to due process.  On the one hand, he arguably alleges that he had completed his probationary period at the time of his termination.  *See* FAC ¶ 13 (In a paragraph relating to both Cheyney and Colwyn, he states that he "passed all probationary period [sic] for the employment."); *see also* 53 P.S. §§ 46186, 46190.  On the other hand, he also alleges that as late as his termination, he was still "in training" and that he was not sworn in until November, 2010 (just two months prior to his termination).  *See Bartal v. Borough of Laureldale*, 515 F. Supp. 2d 556, 563 (E.D. Pa. 2007) ("Pennsylvania courts have clearly held that if a police officer is terminated during the probationary period, even on the last day of the period, the police officer has failed to secure a property interest.").  Should Mr. DeVore choose to ask to amend this portion of Count III, he will be expected to clarify these issues.

The only constitutional violation that Mr. DeVore has sufficiently pled is his First Amendment retaliation claim against Ms. Pray.  In his *Monell* count, Mr. DeVore generally alleges that Colwyn Borough had a "policy, practice or custom to condone, acquiesce and not supervisor [sic] for and/or train against retaliation and race, sex, age, or political affiliation discrimination."  FAC ¶ 72.[24]  Arguably, Mr. DeVore has also alleged a deprivation of due process with regard to his termination, albeit against the wrong Defendant, and he claims in his *Monell* count that Colwyn Borough had a policy of condoning or acquiescing in due process violations.

While Colwyn Borough argues that these allegations are insufficient to support a *Monell* claim, other courts in this district have allowed such claims to move past the motion to dismiss stage based on similar allegations.  *See, e.g., Oswald v. Gibbons*, Civil Action No. 10-6093, 2011 WL 2135619, at *3-4 (E.D. Pa. May 31, 2011); *Davis-Heep v. City of Philadelphia*, Civil Action No. 09-5619, 2010 WL 1568502, at *7 (E.D. Pa. Apr. 19, 2010).  Moreover, in the context of the entire First Amended Complaint, which implicates individuals with policy-making authority for Colwyn Borough, Mr. DeVore's *Monell* claim rises above mere conclusory allegations.  While Mr. DeVore faces a high burden in proving *Monell* liability, as do all plaintiffs, he has sufficiently stated a claim against Colwyn Borough.

### E.     Title VII and PHRA

As an initial matter, the Court notes that several of the individual Defendants are named

---

[24]     Mr. DeVore does provide further facts regarding his allegation that Colwyn Borough had a policy of racial discrimination, but because he has not successfully alleged any underlying constitutional violations regarding his race, those additional facts are of no moment here.

in Count I, Mr. DeVore's Title VII count.  In his oppositions to the motions and at oral argument,

Mr. DeVore acknowledged that he cannot bring a Title VII claim against individual employees

and explained that intended to sue only the employer-defendants (Cheyney University and

Colwyn Borough) under that count.

     *1.    Exhaustion*

Colwyn argues that Mr. DeVore failed to exhaust his administrative remedies under Title

VII or the PHRA with regard to his termination from employment at Colwyn Borough.  As to the

PHRA claims, Colwyn argues that Mr. DeVore failed to plead that he had dual-filed his EEOC

charge with the PHRC.  However, Mr. DeVore does allege just that in paragraph 7 of his First

Amended Complaint, and even includes PHRC reference numbers.  Thus, to the extent that

Colwyn, or any other Defendant, argues that Mr. DeVore has not pleaded exhaustion as to his

PHRA claim, that argument is without merit.

In addition, Colwyn points out that the EEOC's right to sue letters are dated October 22,

2010, which is months before Mr. DeVore was terminated from his position at Colwyn Borough,

and weeks before several of the other acts of alleged discrimination occurred.  The Borough cites

to *Pourkay v. City of Philadelphia*, No. 06-5529, 2009 WL 1795814 (E.D. Pa. June 23, 2009), in

support of the proposition that discriminatory conduct that occurs after a right to sue letter has

issued (and, consequently, after the administrative charge is no longer pending) is not covered by

that administrative charge.  It also cites to *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984),

which holds that acts of retaliation or discrimination which occur after the filing of an

administrative charge do not require the filing of a new administrative charge if (1) the

subsequent acts occur *while the charge is still pending* and (2) the subsequent acts are reasonably

25

related to the earlier acts.

Without directly engaging in the argument that the right to sue letter issued before much of the alleged discriminatory and/or retaliatory conduct is alleged to have taken place, Mr. DeVore simply contends that he has pleaded enough and that a right to sue letter is conclusive proof of exhaustion.

While Mr. DeVore is correct that a right to sue letter is proof of exhaustion and that acts that occurred after the filing of an EEOC charge that relate to the subject matter of the charge may be deemed part of that original charge for exhaustion purposes, he plainly ignores the evidence–which he himself presented to the Court by way of attaching the right-to-sue letters to his original complaint–that the EEOC investigation was no longer pending when many of the alleged discriminatory acts that appear in his pleading occurred. *See* 29 C.F.R. § 1601.28(a)(3) ("Issuance of a notice of right to sue shall terminate further proceeding of any charge that is not a Commissioner charge . . ."). Therefore, Mr. DeVore's Title VII claim against Colwyn fails as to any events that took place after October 22, 2010.

Exhaustion of Mr. DeVore's PHRA claim, however, may be a different matter. The Defendants cite to no authority which says that when the EEOC closes a dual-filed charge, the PHRC automatically follows suit. The PHRC's policy statement regarding "Disposition of Cases Initially Filed with EEOC" is silent as to the effect of the issuance of an EEOC right to sue letter, but does state that the PHRC may decide not to accept the investigative conclusions of the EEOC in any case first filed with that agency. *See* Disposition of Cases Initially Filed with EEOC, PHRC Policy No. 00-01 (Dec. 18, 2000) (*available at* http://www.portal.state.pa.us/portal/server.pt/document/1086395/phrc_policy_manual_pdf).

Moreover, although the same policy statement does state that the PHRC will send a right to sue

letter to a complainant if the EEOC has not resolved a charge within a year, the PHRC's policy

leaves open the possibility of a complainant asking the PHRC to continue to investigate a charge

which the EEOC has failed to resolve within that time frame.  *See id.*  Because the First

Amended Complaint merely says that Mr. DeVore exhausted his remedies, does not attach any

right to sue letters from the PHRC, and is silent as to when the PHRC's investigation, if any,

ended, it would be premature to definitively say that Mr. DeVore has failed to exhaust his

remedies vis a vis his PHRA claim.  While this very well may be an issue that will come up again

at summary judgment,[25] at the motion to dismiss stage, the Court will deny the Defendants'

motions to the extent they seek dismissal of Mr. DeVore's PHRA claim on exhaustion grounds.

     *2.    Title VII*

     Under Title VII, an employer may not "discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's

race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  Likewise, an employer

may not discriminate against an employee "because he has opposed any practice made an

unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted,

or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42

U.S.C.A. § 2000e-3.  Aside from its exhaustion arguments, Colwyn argues that Mr. DeVore fails

---

[25]     For instance, Mayor Rutland claims that Mr. DeVore has not exhausted his
administrative remedies as to his PHRA claims against Mayor Rutland because the Mayor was
never specifically named in Mr. DeVore's discrimination charges.  As previously noted, because
the EEOC charge, dual-filed with the PHRC, is outside the First Amended Complaint, the Court
will not consider it for the purposes of this decision but admonishes Mr. DeVore to consider
these arguments in crafting an amended complaint, should he try to do so.

in Count I to set forth *any* allegations of sex or age discrimination against Colwyn under Title VII

or to successfully plead that Mr. DeVore was subjected to a hostile work environment or was

treated differently because of his race or his history of filing discrimination charges.[26]   Mr.

DeVore fails to respond to Colwyn's arguments on this issue.   However, given his vehement

opposition to many of the other arguments and his statements at oral argument, this silence

appears to have been an oversight rather than a concession.

### a.      Gender and age discrimination

To begin with, Colwyn is correct that Mr. DeVore does not include in his First Amended

Complaint any allegations that would suggest that Colwyn or its employees discriminated against

Mr. DeVore on the basis of his gender or age.   Indeed, in the First Amended Complaint, Mr.

DeVore does not even state his age, and the only allegations that arguably touch on gender

discrimination relate to his employment at Cheyney University.   Thus, to the extent that Mr.

DeVore seeks to assert a Title VII claim against Colwyn Borough for gender or age

discrimination, such a claim fails.

### b.      Hostile work environment

Title VII plaintiffs may bring a claim by pleading that they were subjected to a hostile

work environment.

> To establish that there was a hostile work environment, the plaintiff must prove: (1) [the employee] suffered intentional discrimination because of [the] protected activity [or because of membership in a protected class]; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [the employee]; (4) it would have

---

[26]      Colwyn does not explicitly say that it advances these same arguments as to the related PHRA claim; instead, Colwyn focuses on exhaustion arguments and on arguing that Mr. DeVore has not successfully pleaded that Colwyn aided or abetted any discrimination.

detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present.

*Griffin v. Harrisburg Property Services, Inc.*, 421 Fed. Appx. 204, 207 (3d Cir. 2011) (internal

quotation and citation omitted).  Colwyn argues that Mr. DeVore has not identified pervasive or

regular abusive conduct directed at him because of his race, and certainly not a pattern of conduct

that was sufficiently severe or pervasive that it altered the conditions of his employment.

The First Amended Complaint does not make clear whether Mr. DeVore's hostile work

environment claim is against Colwyn Borough or Cheyney University or both. Assuming Mr.

DeVore is bringing a hostile work environment claim against Colwyn Borough, the adverse

employment actions he has ascribed in Count I to Colwyn Borough that took place before the

right to sue letters issued–a delay in his swearing in and in his MPO certification–simply do not

rise to the level of harassment necessary to state a claim for hostile work environment, nor are

there sufficient allegations connecting those actions with membership in a protected class or with

protected activity, as noted above.  *See* Section III.D.3., *supra*.  Moreover, although he does not

explicitly include them in Count I, the allegations that Mr. DeVore and other African-American

officers were excluded from the Colwyn schedule similarly fall short of the kind of harassing and

sustained conduct required to state a claim for a hostile work environment, as do the allegations

that on two discrete occasions Colwyn officers warned Mr. DeVore that he did not have a future

at Colwyn.  Thus, Count I will be dismissed to the extent Mr. DeVore attempts to assert a hostile

work environment claim against Colwyn Borough.

c.      Racial discrimination

Colwyn also argues that Mr. DeVore has not stated a race discrimination claim because

he did not plead any facts supporting his belief that African-American officers were singled out because of their race or that similarly situated white officers were placed on the work schedule, nor did he plead any facts that would reveal a racial animus on the part of any of the Colwyn defendants.  The only adverse employment events that took place prior to October 22, 2010 had to do with the delays in swearing Mr. DeVore in and in his MPOETC certification and the failure to put Mr. DeVore on the official schedule.  The Court has already found that Mr. DeVore has not sufficiently connected the delays to any unlawful animus, nor has he sufficiently alleged that similarly situated officers either of another race or who had not filed discrimination charges were placed on the schedule.[27]  Therefore, this portion of Mr. DeVore's Title VII claim must fail, as well.

>    3.    *PHRA*

PHRA claims are subject to the same analysis as Title VII claims, but the range of possible defendants is larger under the PHRA, as the statute allows for individual liability.  *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Ed.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006); 43 P.S. § 955(e).  Because the substantive analysis is the same under PHRA as it is under Title VII, the portion of Mr. DeVore's PHRA claim relating to events that occurred prior to October 22, 2010 are insufficient to state a PHRA claim.

The PHRA analysis does not end there, however.  As noted above, the Court accepts for the purposes of deciding these motions that Mr. DeVore did properly exhaust his administrative remedies even as to events that took place after October 22, 2010.  Those events include the

---

[27]    Indeed, the Court notes that the two other black officers who Mr. DeVore alleges were initially excluded from the schedule were placed on the schedule after they filed discrimination charges.

traffic citation, Mr. DeVore's solo shift, and Mr. DeVore's termination.  As to the traffic citation, as noted above in Section III.D.4., Mr. DeVore has not sufficiently set forth any facts that would tend to support that the traffic stop was made because of his past petitioning activities.  Similarly, he has not set forth facts that would tend to support that the stop was made because of racial bias or because of membership in some other protected group.

As to forcing Mr. DeVore to work alone, Mr. DeVore does allege that Mayor Rutland approved the schedule containing Mr. DeVore's solo shift after commenting on Mr. DeVore's prior discrimination suits.  Thus, to the extent that his PHRA claim is based on that conduct, Mr. DeVore has stated a claim against both Colwyn Borough and Mayor Rutland.

Mr. DeVore's termination is somewhat more problematic.  Mr. DeVore alleges that Council President Pray voted to terminate him based on his political affiliation.  Political affiliation is not one of the categories protected under the PHRA.  *See* 43 P.S. § 955(a).  However, he also alleges that Mayor Rutland was responsible for terminating him and did so because of his prior litigation.  Although, as previously discussed, Mayor Rutland clearly did not have the authority to actually terminate him, Mayor Rutland's conduct in seeking Mr. DeVore's termination with improper motives could have tainted the termination process, thus subjecting both Mayor Rutland and Colwyn Borough to liability.  *See Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2011) (endorsing the "cat's paw" theory of liability in the context of an employment discrimination suit–i.e., holding that a supervisor's unlawful motive may infect the decision to terminate the plaintiff, even when that supervisor did not personally have the authority to terminate him, thus subjecting the employer to liability).  Again, then, Mr. DeVore has stated a claim against Colwyn Borough and against Mayor Rutland for aiding and abetting a PHRA

31

violation.

## IV.   CONCLUSION

For the foregoing reasons, Counts I and III will be dismissed in their entirety, Count II will be dismissed as to all Defendants except for Defendant Tonette Pray, Count V will be dismissed as to all Defendants except for Defendant Daniel Rutland and Colwyn Borough, and, although subject to the limitations discussed in III.D.7., *supra*, Count IV will not be dismissed. Mr. DeVore may seek leave to amend as outlined above.  An appropriate Order follows.

BY THE COURT:


<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE